IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| WILLIAM N. HICKS, | * |
| | * |
| Plaintiff, | * |
| | * |
| VS. | * |
| | *   CASE NO: CV-14-00076 |
| EQUIFAX INFORMATION SERVICES | * |
| LLC, and PRESTIGE | * |
| FINANCIAL SERVICES, INC. | * |
| | * |
| Defendants. | * |

## COMPLAINT

**COMES NOW**, the Plaintiff, **WILLIAM N. HICKS**, by and through the undersigned attorney and states his complaint as follows:

### JURISDICTION

1. This court has jurisdiction over this matter based upon 28 U.S.C. § 1331, in that this dispute involves predominant issues of federal law. Defendants are liable to Plaintiff pursuant to the provisions of the "Consumer Credit Protection Act of 1968," 15 U.S.C. § 1601, et seq., as well as other applicable law.

### THE PARTIES

2. Plaintiff is a natural person, a resident of this district, a citizen of the State of Alabama and of the United States. Plaintiff is a "consumer" as defined by § 1681a(c) of the Fair Credit Reporting Act ("FCRA").

3. Prestige Financial Services, Inc., ("Prestige") is a corporation doing business in this district.

4. Prestige Financial is a furnisher of information as defined in 15 U.S.C § 1681s-2 of the FCRA and/or a user of consumer credit reports.

1

5. Equifax Information Services, LLC, ("Equifax") is a corporation incorporated under the laws of Georgia.

6. Equifax is a consumer reporting agency as defined in § 1681 of the FCRA.

## FACTUAL ALLEGATIONS

7. On or about April 29, 2010, Plaintiff entered into a contract with Gwinnett Place Nissan for the purchase and financing of a 2008 Nissan Frontier truck. The contract was purchased shortly thereafter by Prestige Financial.

8. The Nissan was purchased for Mr. Hicks' personal use and enjoyment.

9. December 7, 2010, Mr. Hicks was severely injured in an accident while driving the vehicle. In addition the Nissan vehicle was "totaled."

10. At the time of the accident the Nissan was insured.

11. While Plaintiff was hospitalized and under medical care, he communicated with Prestige Financial regarding his account. Prestige Financial agreed that Plaintiff could defer his January payment until February to allow him to either settle the insurance claim or return to work and resume making payments.

12. Despite agreeing to defer the payments, Prestige Financial convinced Plaintiff's insurer, Safeway Insurance, to tender the claim proceeds of $12,226.52 directly to it. Immediately thereafter, Prestige Financial wrongly repossessed the vehicle from the insurance company's storage facility. This done was without the knowledge, consent or agreement of the Plaintiff.

13. After the repossession Plaintiff's vehicle was illegally sold in violation of O.C.G.A. § 10-1-36 which states, in pertinent part, the following:

> [T]he seller or holder shall not be entitled to recover a deficiency against the buyer unless within ten days after the repossession he or she forwards by

registered or certified mail or statutory overnight delivery to the address of the buyer shown on the contract or later designated by the buyer a notice of the seller's or holder's intention to pursue a deficiency claim against the buyer. The notice shall also advise the buyer of his or her rights of redemption, as well as his or her right to demand a public sale of the repossessed motor vehicle. In the event the buyer exercises his or her right to demand a public sale of the goods, he or she shall in writing so advise the seller or holder of his or her election by registered or certified mail or statutory overnight delivery addressed to the seller or holder at the address from which the seller's or holder's notice emanated within ten days after the posting of the original seller's or holder's notice.

Ga. Code Ann. § 10-1-36 (West) O.C.G.A. § 10-1-36.[1]

14. Despite the fact that Plaintiff was not provided the required notice of the sale, on or about November 1, 2011, Prestige Financial filed suit in Georgia state court seeking to collect the deficiency remaining after the disposition of the Nissan motor vehicle.

15. In addition, Plaintiff had personal property stored in the vehicle and he was not notified of Prestige Financial's intent to dispose of his personal property, as required by O.C.G.A. § 44-14-411.1.

16. In response to Prestige Financial's collection suit, Mr. Hicks filed an answer and counterclaim on December 1, 2011.

17. The case was set for trial and on or about January 5, 2012. Prestige Financial and Mr. Hicks entered into an agreement whereby Prestige Financial agreed to a dismissal of the collection suit in exchange for Mr. Hicks dismissing his counterclaims. All the claims were then dismissed with prejudice.

18. Receintly, after the denial of credit, Mr. Hicks ordered his consumer credit reports from Transunion, Experian and Equifax. After examining the same, Plaintiff learned that the Prestige Financial was reporting inaccurate information about him.

---

[1] At the time of the purchase and repossession of the Nissan vehicle Mr. Hicks resided in Georgia.

Despite the agreement mentioned above Prestige Financial was reporting to the credit bureaus and others a "charge off" and "past due balance" related to his account.

19. Mr. Hicks filed disputes with all three credit bureaus and Prestige Financial both online and by first-class mail. He requested a reinvestigation and correction of the same inaccurate reporting. Included with the correspondence were copies of Prestige Financial's own stipulation to a dismissal of the collection case with prejudice.

20. Shortly afterward, both Transunion and Experian removed the inaccurate reporting of the Prestige Financial account, however, Equifax chose not to do so.

21. Adverse information contained in credit reports from Equifax remains as follows:

> **Prestige Financial:**
> Open Balance 05/05/2010 $5,109
> $3,600 CHARGE-OFF
> Past Due Amount $3,600

22. Plaintiff notified Equifax and Prestige Financial numerous times of the inaccurate reporting the Prestige Financial account and requested a reinvestigation and correction of the same.

23. Both defendants failed and refused to correct the erroneous reporting of the account.

24. Defendants:

    a. Failed to conduct an adequate investigation with respect to the disputed information;

    b. Failed to review all information provided by the consumer; and

    c.    Were careless and negligent in the manner in which they carried out any investigation.

## COUNT ONE
*Failure to Comply with § 1681s-2(b)*
*of the Fair Credit Reporting Act and for Negligence*

25. This is a count against Prestige Financial for its failure to comply with § 1681s-2(b) of the FCRA and negligence.

26. Plaintiff re-alleges the relevant foregoing paragraphs of this complaint as if fully set out herein.

27. After receiving notice of the dispute, from Plaintiff and Equifax, Prestige Financial:

    a.    Failed to conduct an adequate investigation with regard to the disputed information;

    b.    Failed to review all relevant information provided by the consumer and provided by consumer reporting agencies;

    c.    Failed to promptly investigate and report the investigation of the consumer to consumer reporting agencies continued to report the same misleading and inaccurate information and false complained of above and otherwise violated the FCRA; and

    d.    was otherwise careless and negligent.

**WHEREFORE**, Plaintiff prays for actual damages, statutory damages, costs and attorney fees, punitive damages; such other relief as the Court deems proper.

## COUNT TWO
*State Law and FCRA Violations by Equifax*

28. This is a count against Equifax for violations of the FCRA and state law.

29. Plaintiff re-alleges the relevant foregoing paragraphs of this complaint as if fully set out herein.

30. Equifax failed and refused to adequately reinvestigate the disputed account of Plaintiff as required by the FCRA.

31. Equifax failed and refused to send Prestige Financial all of the information regarding the disputed account that was supplied to it by the Plaintiff.

32. Equifax failed and refused to employ reasonable procedures to timely and properly reinvestigate the accuracy of the erroneous, negative data upon being notified by Plaintiff that such information was erroneous.

33. Equifax, through its actions and inactions, as described herein, caused great and irreparable injury to Plaintiff.

34. In addition to actual or compensatory damages for its negligent conduct, Defendant Equifax is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages under and/or for willful violation(s) of the provisions of the FCRA or other applicable federal and/or state laws.

**WHEREFORE**, Plaintiff prays for actual damages; statutory damages, costs and attorney fees, punitive damages; such other relief as the Court deems proper.

**RESPECTFULLY SUBMITTED**, this the 21st day of February, 2014.

/s/Earl P. Underwood, Jr.
**EARL P. UNDERWOOD, JR.  (UNDEE6591)**
**Attorney for Plaintiff**

**OF COUNSEL:**
UNDERWOOD & RIEMER, PC
21 South Section St.
Fairhope, Alabama 36532

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY OF THE ISSUES IN THIS CASE.**

/s/Earl P. Underwood, Jr.
Earl P. Underwood, Jr.

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL AS FOLLOWS:**

Equifax Information Services, LLC
CSC Lawyers Incorporating Svc Inc.
150 S Perry St
Montgomery, Al 38104

Prestige Financial Bank, NA
CT Corporation System
2 North Jackson St., Suite 805
Montgomery, AL 38104